*1065 The opinion oí the court was delivered by
Bermudez, C. J.
This suit involves the liability of a surety on a notary’s bond furnished in 1884.
From a judgment in favor of Trepagnier and Birba the surety, Rabasse, appeals.
The facts are as follows:
On the 28th of May, 1888, and on the 18th of December of the same year, two mortgage acts were drawn up by Oscar Drouet, a notary for the parish of Orleans, by the first of which Degeorge is said to have issued two notes of $500 each in favor of Trepagnier, and by the second of which Mansion is stated to have issued in favor of Tudury three notes of $1P00 each, and both to have secured them by mortgage on their respective property described in the acts.
At the dates of the acts the notary paraphed the notes “ ne varietur,” as secured by mortgage by acts before him.
On the notes are found unsigned indorsements showing payments of interest at different times.
Each of the $500 notes bears an indorsement in the following terms: ‘'Ne varietur.”
“ In conformity with an act passed this day before me, containing prolongation of payment of this note for one year from 28th of May last, and all interest paid up to 28th May, 1889.
“ Oscar Drouet, Notary Public.
“ New Orleans, 11th May, 1888.”
Each of the $1000 notes bear a similar indorsement, except as to the date from which the prolongation begins and up to which the interest was paid, which is the 18th of December, 1889. The'indorsement is dated: “ New Orleans, 27th Dec., 1888,” • and is signed
Oscar Drouet, notary public.”
Neither the acts of mortgage nor the notes were signed by either Degeorge or Mansion. That which purported to be their signatures thereto had been forged by Drouet, the notary. The acts of prolongation referred to in the indorsements had no existence. They had never been even drawn up and forged.
Trepagnier and Birba owned the notes previous to the dates of the last indorsements thereon, referring to the acts of prolongation.
On the 22d of August, 1884, long before the date of the last indorsements, Drouet had furnished a bond as notary for the parish of *1066 Orleans, for the sum of $5000, with Eugene Rabasse as surety thereon, containing the following stipulation:
“ The condition of the above obligation is such that, if the above bounden Oscar Drouet shall well and faithfully discharge and perform all the duties incumbent on him, as notary public in and for the parish of Orleans, then and in such case the above obligation to be null and void; otherwise to remain in full force and virtue.”
The question presented is simply whether Rabasse is liable to Trepagnier and Birba, because of the falsity of the indorsements made by Drouet, as notary, on the 11th May and 27th December, 1888, on the notes respectively then held by them, after thé date of the bond furnished by him.
In order to solve the question, it becomes necessary to determine the extent of the responsibility assumed by the surety and ascertain whether the act done by Drouet was a duty incumbent upon him as notary, coming within the purview of the contractual obligation entered into.
The bond is a legal bond, furnished in compliance with a special law requiring it, and which forms part of it.
The stipulations which it thus contains constitute the contract entered into and must be strictly construed.
The object contemplated was to make certain that the notary would discharge and perform well and faithfully all the duties incumbent upon him, and in case of his failure to do so, and loss was sustained thereby, to hold the surety liable.
Section 2503 of the Revised Statutes indeed provides that the bond shall be “conditioned for the faithful performance of all duties required by law toward all persons who may employ him in his profession óf notary.”
The section applies to all bonds furnished by notaries, whether for the parish of Orleans or the other parishes.
Under the law, notaries and their sureties are liable to all persons who have employed them and who suffer injury on account of their failure to perform a duty incumbent on them or required by law.
It would be cumbersome, and unnecessarily so, to enumerate all the acts which a notary may legally do.
A notary is defined to be an officer whose duty is to attest the genuineness of any deeds or writings in order to render them avail *1067 able as evidence of the facts therein contained. Abbott’s Digest, Yol. 2, p. 182, V. Notary.
Also, a notary is a public functionary, authorized to receive all acts and contracts to which parties wish to give the character of authenticity attached to the act of public authority, to secure their date, their preservation and the delivery of copies. Diet. Droit 'Civil, Yol. 5, p. 27, Y. Notaire.
Although Section 2492, Revised Statutes, provides that notaries public shall have certain powers, it does not undertake to enumerate them all. It does not mention, for instance, that of receiving the renunciation of married women of their rights over the property of their husbands; the duty imposed upon notaries to attend to the'registry of acts of sale in the conveyance book of the proper office, to paraph notes secured by privilege, or mortgage with acts before them, R. C. C. 8884, and various other acts authorized by law.
In the cases of solemn acts, that is, of acts which, in order to be valid, must be drawn up after the fulfilment of certain specified formalities, and must be framed in a particular form, a failure by the notary to observe the ceremonies required by law, which it is incumbent upon him to comply with under pain of nullity, the notary is responsible for a non-compliance therewith, and his bondsmen are likewise liable with him, their obligation being that he will faithfully discharge and perform all the duties incumbent on him, or required by law of him, or else he and they will be liable toward persons employing them.-
Before a notary and his surety can be held, it is necessary therefore to determine whether the act done or not done, committed or omitted, was or not authorized by law, was or not incumbent upon him, -was or not required of him, whether he was directed to do it, whether he has failed to discharge the duty, and whether injury has been sustained.
It has hence been held, that where a notary does a thing which the law does not authorize him to do, although he does so, eo nomine, in his capacity of a notary public, the surety is not responsible.
In Brown vs. Schmidt, 7 An. 349, it was decided that where a' purchaser had paid the price to the notary he incurred the risk of •the deposit.
In Lescongere vs. Ducatel, 18 An. 470, which was a suit against a notary and his sureties for the recovery of money deposited with the *1068 notary and not delivered by Mm, the court stated that the law had not made it the official duty of a notary to receive money, holding that u the securities of a notary are only liable on his failure to discharge the duties of his office.”
In Monrose vs. Brocard et al., 20 An. 78, which was a kindred suit, the court relieved the surety, saying that the security which the notary gives for the faithful performance of his duties is only bound for such acts of his as the law authorizes or requires him to do in his official capacity.
In Saloy vs. Bank, 39 An. 93, these rulings were referred to with •approval.
Indeed, by signing the bond the surety tells all who may need the services of a notary: You can go with security to this notary. I assure you that he is a competent officer'; that he will well and faithfully discharge and perform all the duties imposed upon him by law; and if he fails in doing so, I will be responsible to you for loss sustained.
If therefore a person calls on a notary for the performance of a duty incumbent upon him, and the notary fails therein and injury is suffered, the surety is liable to the party injured.
Burge on Suretyship, p. 49, says that the surety of a public officer is responsible only for those acts which are done by virtue, or under color, or by means of the office he holds.
Laurent, Vol. 19, p. 108, No. 112, while dealing with the responsibility of notaries, says:
“ Hors de la mission, l’offieier public n’est plus qu’ún simple particulier.”
Applying these prineiplés to the case under consideration, it is apparent that there exists no law authorizing a notary, or making it a duty incumbent upon him, to write offiicially on any note, or utter any certificate, that a prolongation of payment of a debt has been allowed by an act before him.
Such attestation could not be authentic; would be in law barren of any effect; could subserve no useful purpose. It could not prove itself; could not be admitted as evidence to show the fact of extension or prolongation. To establish this, the act referred to.would itself, or a copy, have to be produced as the best proof. It would be nothing but a written hearsay declaration, and, as such, inadmissible and of no effect.
*1069 ■■ Although it is manifest that the notary in this case has committed wrongful and criminal acts for which he could have been prosecuted and punished had he lived, it does not follow that his surety can be lield pecuniarily responsible.
It may be that, had the plaintiffs employed the notary to draw up the acts of prolongation and have them signed by the proper parties, and had he prepared them, forging the signatures of the appearers thereto, thereby lulling the creditors into security and preventing them from taking steps to enforce recovery in some way, the surety might be endangered; but the reason would have been that the notary employed to draw up the acts had failed to perform a duty incumbent upon him and required of him by his employer and had prevented the creditor from having recourse to law to secure his rights; but this is not the case presented, which is simply one in which a surety is sought to be held, because his principal, the notary, has done acts which the law did not authorize or compel him to perform, and which were therefore not incumbent upon him.
The suggestion of want of jurisdiction made since the submission of the case has no merit.
This suit is for a sum exceeding $2000. The judgment was for upward of $2500. The appellant admits no liability and seeks the reversal of the judgment.
For these reasons it is ordered and decreed that the judgment appealed from be avoided and reversed, and it is now adjudged that there be judgment in favor of the defendant, Rabasse, respecting the demand of the plaintiffs, Trepagnier and Birba, against him as surety, with costs in both courts.